UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 2003-10370-DPW

```
* * * * * * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA    *
                            *
V.                          *
                            *
JOHN MCCARTHY               *
* * * * * * * * * * * * * * * * * * * *
```

### DEFENDANT, JOHN MCCARTHY'S MOTION FOR PROBATION AND/OR MOTION FOR HOME CONFINEMENT AS METHOD OF INCARCERATION AND SENTENCING MEMORANDUM

Now comes the Defendant, John McCarthy, in the above-numbered indictment and does respectfully submit his combined Sentencing Memorandum and Motion for Probation and/or Motion for Home Confinement as Method of Incarceration.

1. **STATEMENT OF THE CASE**

The Defendant, John McCarthy agrees with the statement of the case as outlined in the Pre-Sentencing Report ("PSR") Part A entitled "The Offense. By way of explanation, Part A § (F) p. 1, the Defendant John McCarthy's positive test for marijuana on or about March 29, 2005, was the result of his seeking some relief for significant back pain that he had suffered as a result of an injury. This was an isolated incident with only one occurrence.

**I. CASE OVERVIEW – ¶ 2-4,** The Defendant, John McCarthy, does not dispute the allegations. The Defendant, John McCarthy, would furthermore point out in (¶ 4), that Co-Defendant, Kurt Walter, had made arrangements and obtained a locking storage box to be used at a storage facility/workshop at One Watson Place, Framingham, Massachusetts.

II. **"THE WIRETRAPS"** - The Defendant, John McCarthy, does not dispute the statements as set forth in (¶ 5-9).

III. **"CO-OPERATOR INFORMATION"** – ¶ 10-22, as it pertains to Defendant, John McCarthy, only (¶ 21) speaks specifically of his involvement. The Defendant highlights and restates that he was a marijuana customer of Co-Defendant, Kurt Walter. The Defendant, John McCarthy, agrees with the statement set forth in § B, "Information from Unindicted Co-Conspirators", (¶ 23-37). The Defendant, John McCarthy, would point out and highlight from (¶ 36-37), that Walter and persons other than the Defendant, John McCarthy, had made arrangements to obtain and secure a large metal lockbox for Walter to store his marijuana in the warehouse located at One Watson Place, Framingham, Massachusetts. The Defendant, John McCarthy does not dispute the statements as set forth in § 2 "CW-2", (¶ 38-43), as well as § 3 "CW-6 (Gary Milo)", (¶ 44-48), as well as § 4 "Edward Parker", (¶ 49-50), as well as § 5 "Karen Woo", (¶ 51-55), as well as § 6 "Kenneth (Kam Po) Leung", (¶ 56-61). In agreeing with and/or not disputing the allegations as set forth above in the aforementioned Paragraphs, the Defendant, John McCarthy, states that at all time relevant to those allegations the Defendant, John McCarthy's dealings were limited with and to Co-Defendant, Kurt Walter, and at no time did the Defendant, John McCarthy, conspire with, or have any interaction with any of the aforementioned individuals. The Defendant, John McCarthy, was not part of any conspiratorial arrangement or agreement involving any of the above-named individuals other than Kurt Walter. The Defendant states that at all times relevant to this matter he was a customer of Kurt Walter's and purchased marijuana from Kurt Walter that was ultimately resold or used for personal reasons. The Defendant, John McCarthy asserts that he was a minor participant in terms of the conspiracy as alleged by the Government in the above-captioned matter.

IV. "INFORMATION ON INDIVIDUAL DEFENDANTS: WEIGHT CALCULATIONS", The Defendant, John McCarthy, does not possess any knowledge to dispute or agree with the information relative to any of the charged or uncharged Co-Defendants. Relative to § A "Douglas Bannerman", (¶ 62-72), the Defendant, John McCarthy, states he has no specific knowledge and was engaged in no participation with Bannerman and therefore, does not claim any objection or agreement to the above-mentioned allegations. Relative to § B "Kurt Walter", (¶ 73-83), the Defendant, John McCarthy, does not dispute the statements set forth in those Paragraphs. Defendant, John McCarthy, further asserts that he has no personal knowledge of or direct participation with Co-Defendant, Kurt Walter, and his dealings with any of the Co-Defendants, and other named and unnamed parties in the aforementioned Paragraphs. The Defendant, John McCarthy, does not assert any objection to any of the statements in the aforementioned allegations. The Defendant, John McCarthy, states and reasserts his agreement with the allegations as outlined in (¶ 73), that he along with others was a marijuana customer of Kurt Walter. Relative to § C "Gary Newell", (¶ 84-95), the Defendant, John McCarthy, states he has no specific knowledge and was engaged in no participation with Newell and therefore, does not claim any objection or agreement to the above-mentioned allegations. Relative to § D "Daniel McAuley", (¶ 96-106), the Defendant, John McCarthy, states he has no specific knowledge and was engaged in no participation with McAuley and therefore, does not claim any objection or agreement to the above-mentioned allegations.

V. (E) (1) "CHARGED CONDUCT", ¶ 107-114, The Defendant, John McCarthy agrees with certain conversations and statements that were intercepted by the Government but disagrees with the conclusions and opinions arrived at by the Government. In (¶ 107), the Defendant, John McCarthy, agrees the he was a marijuana customer of Kurt Walter. The Defendant, John McCarthy, disputes however, that he ever had taken a more active role in the operation of Walter's marijuana business or that he was ever anything more than a marijuana

customer of Walter. The Defendant, John McCarthy, does not dispute the allegations and comments intercepted by the Government as outlined in (¶ 108-109). Relative to (¶ 109), the Defendant, John McCarthy does not dispute he was at 25 Royal Road in Brookline, Massachusetts and meeting with Walter. The Defendant, John McCarthy, disputes the Government's conclusion and opinion that the meeting at that time was drug related. As Co-Defendant, Kurt Walter, has indicated in his Proffer to the Government, he and Defendant, John McCarthy, have been friends since High School. The Defendant, John McCarthy, further states that he was a Pall Bearer at the Funeral of Kurt Walter's father approximately ten years prior. The Defendant, John McCarthy, states that his purpose for being at 25 Royal Road on August 18th, was for the purpose of assisting Walter in helping with the arrangements of the house of Walter's mother, who had just recently passed away. The Defendant, John McCarthy, further assisted Kurt Walter in his effort by driving Kurt Walter's young son home. Relative to (¶ 110), the Defendant, John McCarthy, disputes the Government's conclusions and opinions regarding McCarthy's possibly taking over or assuming a larger role in the marijuana business of Kurt Walter. Relative to (¶ 111), the Defendant, John McCarthy does not dispute the statements of observations of the Defendant and Kurt Walter at the Watson Place Storage Unit in Framingham, Massachusetts. The Defendant, John McCarthy, does dispute the conclusions and opinions of the Government regarding McCarthy's involvement and/or knowledge. Specifically, the Defendant, John McCarthy, disputes that "Walter and McCarthy were indeed using the Watson Place Storage Unit to Store and Process Marijuana". At all relevant times, the marijuana present at the Watson Place Storage Unit in Framingham, Massachusetts was the property of Kurt Walter. The Defendant, John McCarthy's, role at this time was still that of a marijuana customer of Co-Defendant Kurt Walter's. Relative to (¶ 112-114), the Defendant, John McCarthy, does not dispute the statements and conversations that were intercepted by the Government but, does dispute however, the conclusions and opinions arrived at by the Government relative to those statements.

As it relates to § 2, "Applicable Drug Weight", (¶ 115-117), the Defendant, John McCarthy, agrees with the statements as set forth but, disagrees with the conclusions and opinions arrived at by the Government. Relative to (¶ 115), the Defendant, John McCarthy disputes that he knew about the quantity and/or quality of the marijuana that was present at the One Watson Place Warehouse. The Defendant, John McCarthy, further disputes that he had any knowledge, as the Government alleges, of the quantity of marijuana that was contained in empty wrappers that were found in the warehouse. Relative to (¶116), the Defendant, John McCarthy, does agree that he did not have any knowledge of, possession of, or involvement with, the marijuana found in the One Watson Place Warehouse. At all times, it is clear that the marijuana found in that location was the possession of Kurt Walter, relative to his marijuana distribution activities. The Defendant, John McCarthy, agrees, as stated in (¶ 116), that his mere presence at the warehouse, while Kurt Walter opened his drug packages, in no way demonstrates any agreement between Walter and McCarthy as to the ownership and/or distribution of that marijuana. At all time relevant, that marijuana was the sole and exclusive possession of Co-Defendant, Kurt Walter, as demonstrated by his bringing a locked metal storage box to the One Watson Place Warehouse for the purpose of storing his marijuana. At no time after Co-Defendant, Kurt Walter, is alleged to have stored marijuana at the One Watson Place Warehouse, is John McCarthy observed by the Government or its agents at that warehouse without Kurt Walter. Relative to (¶ 117), the Defendant, John McCarthy, does not dispute the allegations as set forth and is in agreement with the weight assessment of 2.95 kilograms.

Relative to § F "John Graham", (¶ 118-124), the Defendant, John McCarthy, states he has no specific knowledge and was engaged in no participation with Graham and therefore, does not claim any objection or agreement to the above-mentioned allegations. Relative to § G "Jose Vezga", (¶125-131), the Defendant, John McCarthy, states he has no specific knowledge and

was engaged in no participation with Vezga and therefore, does not claim any objection or agreement to the above-mentioned allegations.

The Defendant, John McCarthy, agrees with (¶ 132), "Victim Impact", that there is no identifiable victim in this incident. The Defendant, John McCarthy, further agrees with (¶ 133), "Obstruction of Justice" that there is no available information to indicate that the Defendant has obstructed justice. Relative to (¶ 134), "Acceptance of Responsibility", the Defendant, respectfully requests a three level, offense level reduction pursuant to U.S.S.G. § 3E1.1(a)(b). On or about July 8, 2005, the Government indicated to all defendants that they would not file an objection to a three level reduction of the offense level for early acceptance of responsibility so long as the defendants indicated there intention to change their plea on no later than July 29, 2005. On or about, July 29, 2005, the Government indicated its extension of the deadline to Notice the Defendant's Change of Plea to August 12, 2005. On or about August 12, 2005, the Defendant, John McCarthy, through counsel, notified the Government of his intention to change his plea. As such, the Defendant, John McCarthy, requests that the Court grant a third point that the three level reduction and offense level pursuant to U.S.S.G. § 3E1.1a and b. The Defendant agrees with the offense level computation "Offense Level Computation" as set forth in (¶ 135-140). The Defendant, John McCarthy, is in agreement that he is accountable for 2.95 kilograms of marijuana and pursuant U.S.S.G. § 2D1.1(c)(12), is a base offense level of 12. The Defendant, John McCarthy, further agrees that there are no upward adjustments for the following, (¶ 141) "Specific Offense Characteristics", (¶ 142), "Adjustment For Role in the Offense", (¶ 143), "Victim Related Adjustment", (¶ 144), "Adjustment For Obstruction of Justice", the Defendant, John McCarthy, agrees that the "Adjusted Offense Level" (Subtotal), (¶ 141), is 12. The Defendant requests that a three level reduction for "Adjustment for Acceptance of Responsibility", (¶ 146), be assessed.

VI. "**TOTAL OFFENSE LEVEL**", ¶ 147, The Defendant, John McCarthy, further requests that it be adjusted to 9. The Defendant, John McCarthy, is in agreement with (¶ 148-150). Relative to "Part B-The Defendant's Criminal History", the Defendant, John McCarthy agrees with the Probation Department's calculation of the Defendant as a Criminal History 1, (¶ 151-160). Relative to "Part C-Offender Characteristics", the Defendant, John McCarthy, agrees with the personal and family data as outlined in (¶ 161-190). The Defendant, John McCarthy, further agrees with the "Financial Condition-Ability to Pay" as outlined in (¶ 191-207). Relative to Part D – "Sentencing Options", (¶ 208-236), the Defendant, John McCarthy, is in agreement with those statements. The only adjustments that would be applicable was is the Court was inclined to give a three level reduction in the offense level for early acceptance of responsibility, (¶146), this would reduce the total offense level, (¶ 147), to 9. The "Guideline Provisions", (¶ 210), for a Total Offense Level of 9 and a Criminal History Category of 1, would be a guideline imprisonment range of 4 to 10 months. Relative to "Guideline Provisions", (¶ 212), if the Defendant is sentenced to a total Offense Level of 10 or total Offense Level of 9 at a Criminal History Level of 1, US.S.G. § 5 C1.1(c), would be applicable. Under that guideline, the Defendant, John McCarthy, the sentencing could be satisfied by community confinement and/or home detention. Pursuant to (¶ 216-217), "Home Detention", the Defendant, John McCarthy, is eligible and a potentially acceptable candidate for home detention as a special condition of supervised release.

2. **THE DEFENDANT, JOHN MCCARTHY'S REQUEST FOR PROBATION AND/OR MOTION FOR INCARCERATION FOR HOME CONFINEMENT**

Pursuant to the United States v. Booker, 125 S.C. 738, 748-750 (2005), the Sentencing Court must now consider all of the factors set forth in 18 U.S.C. § 3553. The Court should no longer consider just the guidelines and policy statements of the U.S. Sentencing Guideline Manual. See Booker, 125 S.C. 757. See also United States v. Crosby, 397, 3rd, 103 (2nd

Circuit), February 2, 2005, United States v. Hughes, 401F 3rd 540 (4th Circuit), March 16, 2005. The principle as now set forth suggests that the sentence must be "sufficient but not greater than necessary to fulfill the need for the sentence imposed." The factors to be considered include, to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense, to afford adequate deterrence to further criminal conduct and to protect the public from further crimes of the Defendant. The factors the Court shall consider in determining a sentence is sufficient but not greater than necessary are 1. Nature and Circumstances of the Offense as Well as the History and Characteristics of the Defendant; 2. The Purposes of the Sentences Above; 3. The Kinds of Sentences Available; 4. The Advisory Guidelines; 5. Any Pertinent Policy Statement in the Guidelines Manual, Including the Departures.

The Defendant, John McCarthy, would respectfully request that the Court consider other mitigating factors as sentencing considerations. These factors include the Defendant's age, his education, his vocational skills, employment record, family situation, responsibilities, charitable and public service. John McCarthy is 41 years old, he currently resides in the apartment that he lived in his entire life. He had previously resided in this apartment with his parents and currently lives there on his own. Pursuant to (¶ 170) of the PSR, it is a simply furnished and modest apartment in a residential neighborhood. The Defendant, John McCarthy's parents divorced when he was approximately 13 years old. His mother relocated out-of-state. Mr. McCarthy spent the remainder of his adolescence, living with his father and grandfather. Currently, Mr. McCarthy's dad, John J. McCarthy, age 65, lives in Watertown, Massachusetts with Mr. McCarthy's grandfather, who is 99 years old and suffers from Alzheimer's. Mr. McCarthy's dad suffers from rheumatoid arthritis. John McCarthy is a primary caretaker for his dad and grandfather as he goes to their residence at least twice a week to help with maintenance of the home and to take care of his dad and grandfather. John McCarthy is and has been his whole life, essentially a hardworking responsible adult, whose life of modest means, belies the

Government's assertions that he is a major player in a large drug distribution ring. His primary employment since 1986 has been as a Union member of Local 31, the International Allegiance of Theatre and Stage Employees (IATSE). Mr. McCarthy works as a project and set designer for various production companies in the area doing commercials, movies, live stage performances and television shows. Mr. McCarthy would normally work on a project anywhere from several days to several months, depending upon the size and scope of the project. When the project is going it is not uncommon for him to work up to 20 hours per day. This employment as outlined in (¶ 188-190), coupled by the financial assets as outlined in (¶ 194-198), contradicts the Government's assertion of Mr. McCarthy's role as a major player in the marijuana trade.

Throughout the extensive surveillance conducted by the Government in this case, there is little to no observations of the Defendant, John McCarthy, engaged in any kind of drug transactions. His major involvement, as alleged by the Government, is his connection with the workshop/warehouse located at One Watson Place in Framingham, Massachusetts. This was a workshop that Mr. McCarthy had rented in late winter/early spring of 2002 upon his return from Florida. The rent for that workshop is noted as $300.00 per month in (¶ 205), on the PSR. This was a location that Mr. McCarthy had acquired in order to store his tools and to use in conjunction with his employment in the IATSE. During all times relevant to this case, when Co-Defendant, Kurt Walter, had stored any of his marijuana at that location, Mr. McCarthy was never present without Kurt Walter. Additionally, Co-Defendant, Walter, had made arrangements to obtain and transported a metal locked storage box to be used at the warehouse workshop for the purpose of storing Walter's drugs. All of the objective information and reasonable inferences drawn therefrom, support the position that all of the drugs located at the Watson Place Warehouse were the sole and exclusive possession of Kurt Walter.

The Government has maintained from very early on in this case, that Mr. McCarthy was a marijuana customer of Kurt Walter. This is initially stated in (¶ 67, John McCarthy), on Page 38, of the Application and Affidavit for Search Warrant, 2003M0479RBC, dated November 26, 2003. "67. calls between Walter and McCarthy revealed that McCarthy "a/k/a Butchy" was a marijuana customer of Walter's". On July 28, 2005, Co-Defendant, Kurt Walter, provided a Proffer to the Government regarding this matter. In (¶ 7), of the July 28, 2005 Proffer, the report of an investigation states "Walter met John McCarthy, a/k/a Butchy in the late 1970's in High School. After High School, they became friends and owned a business together. The business was called "When it was a Game, a/k/a Retro Sports, Inc". They used marijuana together and Walter gave him sold small quantities of marijuana to McCarthy. Walter was asked if there was a time if he and McCarthy planned on McCarthy planned on taking on a more hands-on role in Walter's marijuana dealings. Walter advised they talked about it but that it never happened". In a second Proffer by Co-Defendant, Kurt Walter, on approximately a week later on August 2, 2005, Walter is reported to have stated "related to John McCarthy a/k/a Butchy, Walter stated that McCarthy did know that Walter was storing and processing marijuana in the warehouse. Walter however, stated he was not sure that McCarthy knew exactly how much marijuana was there in the storage space. When questioned about McCarthy taking over hands-on distribution of Walter's marijuana, Walter replied that McCarthy was only going to do this when Walter's girlfriend was around and not full-time related to the amounts that Walter was distributing to McCarthy, Walter confirmed that McCarthy was distributing pound quantities". Additionally, there is a third report of DEA "Reporting an Investigation", regarding a Proffer by Kurt Walter to the Government. This Proffer is not dated. In this Proffer is reported "Walter met John McCarthy a/k/a Butchy in the late 1970's in High School. After High School, they became friends and owned a business together. The business was called "When it was a game, a/k/a Retro Sports, Inc.", they used marijuana together and Walter game him sold small quantities of marijuana to McCarthy. Walter was asked if there was a time when he and McCarthy planned

on McCarthy taking on a more hands-on role in Walter's marijuana dealings. Walter advised they talked about it but that it never happened." This report of a Proffer by Kurt Walter, that is undated, appears to be a combination of the July 28, 2005 Proffer and the August 2, 2005 Proffer. It is clear from all of the statements by Kurt Walter to the Government that John McCarthy was a marijuana customer of Kurt Walter's. It is also clear that the marijuana that was being stored and processed at the Framingham workshop/warehouse was the sole possession of Kurt Walter's. Walter indicated in two of the three Proffers that there had been discussion but never any plan or action involving McCarthy's becoming involved in Walter's marijuana distribution operation. In the August 2, 2005 Proffer, there is a statement that "McCarthy was only going to do this when Walter's girlfriend was around and not full-time". It appears from that statement that this was a plan for something that might have happened in the future but did not actually ever happen.

As noted above in several areas, John McCarthy was a longtime friend of Kurt Walter's since the time when they both attended Brookline High School. Their relationship goes far beyond Mr. McCarthy being a marijuana customer of Kurt Walter's. Approximately 10 years ago when Kurt Walter's dad passed away, John McCarthy served as a pall bearer at that funeral. Additionally, during the pendency of this case, when Kurt Walter's mother passed away, John McCarthy assisted Kurt Walter and his family with the arrangements involving her home in Brookline. This relationship was continued on throughout the pendency of this case. On or about the 2005 Rosh Hashanah holiday, Mr. Walter called John McCarthy's home and left a message on his voicemail, apologizing for everything that has happened in this case, and the trouble that he had brought on Mr. McCarthy. A transcript of that phone call is as follows (the original tape recording is available for review):

"Hey buddy, it's me, listen, aaah,                                    so,                       and aaahh, I don't have anything to atone for except for the mess I have gotten you into and I

know what I want to do, I am going to make this up to you and I am

you and I am        I am so sorry. You have been closer to me than my own brother,

you are my brother and umm, you know, I....it is with me all the time and if I can

it in any way shape or form, I will. It is very important to me and you are closer to me

than my own sister and I love you, not in that way, but you know what I mean. Alright.

Give me a call. Bye, Bye."


It is clear from all of the credible and relevant information in this matter, that John McCarthy was not a partner of Kurt Walter's in his drug distribution business, nor was he a major player. As stated above in several areas, including Kurt Walter's Proffers, Mr. McCarthy was someone who initially began to use marijuana with Kurt Walter and then at some point became a customer of Kurt Walter. The Government, in its October 31, 2005 objections to the Probation Department regarding the draft of the Pre-Sentence Report, asserts their objection as to the calculation of Base Offense Level by the Probation Department relative to John McCarthy. "McCarthy's presence in Walter's warehouse with Walter while Walter was (audibly) engaged in opening marijuana packages....combined with Walter's and McCarthy's discussions about McCarthy's taking more responsibility for the marijuana business, placed McCarthy in a more significant drug category. Although McCarthy did not assume this responsibility from Walter, Walter cooberates that the two discussed it. Such discussions indicate that McCarthy was trusted by Walter and was aware of the scope of his (Walter's) marijuana business". There is no evidence that support these assumptions and conclusions by the Government and as such, should not be considered as clear and convincing evidence of such and should not be considered a valid objection to the Probation Department's calculation of the Base Offense Level for John McCarthy.

## VII. § H POST-OFFENSE REHABILITATION ACCEPTING RESPONSIBILITY

**AND REMORSE:** Mr. McCarthy has, since his arrest and during the pendency of this case, accepted responsibility for his actions, worked hard towards his rehabilitation and has been truly remorseful of his conduct. Attached hereto this memorandum, are several letters of reference written on behalf of John McCarthy. Probably the most compelling letter is that of Robert L. Allen, Jr., Esq. Attorney Allen has the benefit of knowing John McCarthy for over 25 years. He has witnessed Mr. McCarthy's family setting, his educational and professional experiences, his involvement in the Brookline community where they both have resided for their entire lives. More importantly, Mr. Allen has been a source of counsel and a confidant of Mr. McCarthy's for over 25 years. It is clear from Mr. Allen's letter that Mr. McCarthy has taken his circumstances, since his arrest, extremely seriously and has worked hard at being a productive and responsible member of the community. Additionally, there are letters from Mr. McCarthy's professional relationships that speak of him in terms of being a highly dedicated, remarkable, professional individual. There are also letters from various community organizations that speak of Mr. McCarthy's charitable contributions of time and effort over the years. Clearly, all of these comments, from these diverse experiences of Mr. McCarthy's life, strongly dispute the Government's allegations of Mr. McCarthy being a major participant in Kurt Walter's drug distribution organization. Mr. McCarthy has been anxious about the potential embarrassment and difficulty this will cause within his family. As indicated in the Pre-Sentencing Report, Mr. McCarthy has not shared the circumstances of this indictment during the pendency of this case, with his elderly and sick father and grandfather. He is very concerned about what the ramifications of his incarceration would have on them both emotionally, as well as their loss of John McCarthy's assistance in their day to day lives. Throughout the pendency of this case, Mr. McCarthy has continued to work hard in his vocation with the IATSE. During a slow period last winter, with the Court's permission to travel out-of-state, he moved to the Southwest Florida area to live with and near his mother. While he was there, he donated his time, effort and skills to

hurricane relief efforts in that area. He has, as he has throughout his life, continued to work long hours in a demanding work setting in the hopes of demonstrating to the Court that he is an appropriate candidate for a disposition other than incarceration. As Mr. Allen has stated to the Probation Department in (¶ 171), of the Pre-Sentencing Report, Mr. McCarthy got himself "caught up in a situation that was not reflective of who the Defendant really is". The Defendant has been sincerely remorseful of his actions and has faced those everyday since the date of his arrest. As Mr. Allen indicates in his discussion with the Probation Department Mr. McCarthy "has been involving himself in more positive aspects of his life including caring for his parents and maintaining his friendships...and that the Defendant is sincerely remorseful for his conduct...".

For all of the foregoing reasons the Defendant, John McCarthy, respectfully requests that this Honorable Court accept and adopt the Offense Level as determined by the Probation Department in the Pre-Sentence Report. Mr. McCarthy further requests that within that Offense Level range, the Court impose the least restrictive sentence of 4 to 6 months of Home Confinement in conjunction with the term of probation.

WHEREFORE, the Defendant respectfully requests that this Honorable approve the Defendant's request.

                                             Respectfully Submitted
                                             JOHN MCCARTHY,
                                             By His Attorney,

                                           *[signature]*
                                           John T. Diamond, III
                                           TORNEY, MAHONEY DIAMOND
                                           & BENNETT
                                           15 Foster Street
                                           Quincy, MA 02169
                                           BBO No: 555934
                                           Tel: (617) 770-0000

*DATE: November 18, 2005*